Richard L. Antonini, counsel for Pellant, Ashley Susan Aarons, Joshua L. Scheer, counsel for Appalee, Patchett Land Lending, LLC Okay, Mr. Antonini, how much time would you like to reserve, if any? Three minutes, please, Your Honor. You got it. Please go ahead. Thank you. Richard Antonini on behalf of the appellant Ashley Aarons, and I want to thank the court for its patience. It's a long calendar. I want to start a little about two items on background. First, as the court knows, this is a pleading case and a dismissal case under 12B6. So those rules apply. And the question is whether the Ashley Aarons could state at least one viable claim, either in the present complaint or the complaint as it might be amended. Second, I want to talk about some dates because they become important. The Chapter 11 plan was approved on February 11th, 2021. The notice of default that started the foreclosure process was issued by the foreclosure trustee on August 1st, 2021. The case was converted to Chapter 7 on October 28th, 2021. And the actual foreclosure sale of property, Ms. Aarons' home, was completed on March 30th, 2022. So why do these dates matter? Well, the first argument that the appellee made and that the bankruptcy court accepted is that all of these claims were settled, in effect, in a series of settlement agreements and addendums to settlement agreements that eventually were incorporated into the Chapter 11 plan and eventually incorporated into the order confirming the plan, which, as I say, was issued on February 11th, 2021. Now, the settlement agreement itself contains a release. And the release is found on page 1456 of the record, subparagraph 6A. And I just like to which is Ms. Aarons' releases, all claims, demands, obligations, et cetera, of any kind in nature whatsoever, in law and equity, whether known or unknown, from the beginning of time to the date of this agreement. Now, the date of the agreement, the agreement did not go into effect until it was approved by the bankruptcy court as part of Chapter 11 plan. And of course, that occurred on February 11th, 2021. Now, a couple of problems with this. This idea of this release extending to something that occurs after the release is signed and then approved by the bankruptcy court. The foreclosure process under California law starts with the notice of default issued on August 1st, 2021. And it is completed with the foreclosure sale itself on March 30th, 2022. Both of these events occur after this release and settlement agreement is signed and then approved by the bankruptcy court. So you're saying that the notice of foreclosure, I assume was wrongful. What was wrongful about it? It was based on incorrect amounts supposedly in default. And that is alleged in the complaint which the bankruptcy court had to accept as true. And those are amounts that accrued before the date of the release, correct? Yes. And I believe, if I remember correctly, also, I think the settlement agreement recited an amount due as of the date of the settlement? Yes. Is that right? Yes. So how is it that the wrongful conduct happened after the date of the release? Because the conduct did not, the cause of action for wrongful foreclosure did not accrue under California law until the actual foreclosure sale. Issuing a defective notice of default doesn't really cause any harm in itself unless there's follow-through to complete the foreclosure sale. And there's a lot of California case law that tell that a wrongful foreclosure, of course, requires a foreclosure sale. Under the settlement, you'd agreed, your client had agreed to the amount of the debt, correct? Yes. And the amount of the debt reflected in the notice of foreclosure and everything that followed that was consistent with that agreement, correct? Yes. I guess I've lost you at that point. How can you commit a foreclosure violation if your foreclosure is based upon stipulated amounts then you have committed no illegal act, even if foreclosure could be considered something that occurred later, it's all based upon events and circumstances that you agreed existed at the time of the settlement. Well, the complaint alleged that the notice of default stated improper figures. But you just agreed that those figures were not improper and were a part of the settlement that was released. Yes, they were part of the settlement assuming the release extends to a wrongful foreclosure claim. Well, wait, you can't have a wrongful foreclosure claim if it's based upon stipulated amounts. You may not believe that they should proceed, but the factual basis for foreclosure is already agreed, is owed, and is in default. That was stipulated at the time of the settlement. That's true. Well, then let me bring up another point, which is, well, I appreciate the incongruity of the point. That the settlement agreement itself was, in effect, vacated by the conversion. And that's because, as we argue, that the entire, at least the main purpose of the settlement from Aaron's point of view, was no longer possible. That her home was no longer in her, no longer her property under the Bankruptcy Code, and became property of the estate with the exception of the homeowner's exemption. I think Mr. Scheer is going to tell us that what she bargained for in the settlement was not the absolute ability to keep her home, but a chance to keep her home. Yes. And didn't she get that chance? I mean, she couldn't capitalize on it. She couldn't turn that chance into what she wanted, but she got the chance, didn't she? Well, she got the chance, but it's unclear, at least on the record, why the default occurred. And Mr. Scheer will say, of course, that no payments were made during that time. And we will contend, I guess, that the amount of the payments was improper, based on the prior problems with determining the amounts involved. And this, as I said, this will become, I think, is a disputed issue. In fact, it's not a matter of law. And this is a pleading case where you don't decide the disputed issue is a fact. That gets you to the other half of the problem, which is whose asset is this? And it does not seem that is contested upon conversion that the property went back into the Chapter 7 estate. The claims necessarily follow with them. And you seem to suggest that the right to take a homestead exemption allows your client to maintain a separate action. I'm not following that. It's based on two theories. First, their exempt property is not property of the estate, but your exempt property is only right to get the amounts if it sells for that. You exempted an amount. You didn't exempt the asset. The asset remains property of the estate, subject to the estate's administration. So I understand that. But on this record, it sure appears that this remains property of the estate. The house remains property of the estate. The exemption, the homeowner's exemption does not. Those two are not separate and capable of being divorced. The exemption flows only from the realization of the value of the property. It is an incident of that property. It is not an independent right. The exemption flows from the final determination and closing of the estate. And the exemption is paid out at that time. It is not paid out when the property is sold. No, actually, I think it is. Because that is not property of the estate, and I think it does have to be paid out when it's sold. But I don't know if that's a material point in this case. Well, it's a material point in the sense of determining whether this is not property of the estate. If you look at the priority statutes, generally these things are paid out all at once at the very end of the case when all the assets have been marshaled and sold. The trustee has a pot of money and he then pays the exemptions. So, counsel, I think the point that Judge Braker is trying to make is that if your client has a right to a pot of money to some distribution, how does that give her the right to control the claim, which is one that the estate would own, that the trustee would have the right to administer? That's what he's asking. And a simple answer is the claim itself is not property of the estate because it accrued after the conversion date. But the house remained property of the estate, and it derives from the sale of the house. True, but it does not accrue under—it's not really a claim until it accrues under state law. And under state law, it does not accrue until the property is sold, and that is after the conversion date. So, it is not—the claim is not property of the estate because it is post-petition. Or post-conversion, I should say. From that logic, though, the claim is not homestead exemption. It is a claim. Or wrongful foreclosure, which is different than a homestead claim. That's true. So, that might be—it is true. But since the—since this accrual question, this claim question goes to the issue of, you know, who has—who owns the property? Who owns this asset? And does the debtor— You haven't really argued that. You have argued that because you have asserted a $600,000 homestead exemption, you control—you have standing to maintain this lawsuit. And we have also argued that we have standing to maintain this lawsuit because the lawsuit itself is not property of the estate. Because it accrued—it accrued after—it accrued after the conversion date. Well— Okay, I'm going to—I'm sorry. Go ahead. I was just going to jump in. Why don't you have about two minutes left if you want to reserve? This would be— I'll reserve, Your Honors. Thank you. Okay. Okay. Mr. Scheer. Thank you, Your Honors. Joshua Scheer for the Appellees. As Your Honors indicated, the debtor fully resolved her claims with the appellants in her modification agreement and plan. She tried to assert the same claims again against the same parties. And the bankruptcy court dismissed her complaint because they deemed it frivolous, ruled that it was contradictory to the plain language of a modification agreement, her own plan, and even her declaration that confirmed the effectiveness of the plan. On top of that, as Your Honors stated, it wasn't property of the debtor. These were claims of the estate, if there are any claims to begin with. How is it a claim of the estate if it arises post-petition? If it is post-confirmation or a wrongful foreclosure post-confirmation, how does that become property of the bankruptcy estate? And specifically, focus on the concept that after confirmation, property of the estate revests in the debtor. Then there's a conversion. So how did that become property of the estate again if it was no estate and it became property of the debtor post-confirmation? That's what we're struggling with. Yes. Well, I'd say the answer to that, when the case converted to Chapter 7, all the property became the trustee's property. What's the legal authority for that? As far as the conversion? Yes. What is the authority for all the property, including post-confirmation, revested property, became property of the Chapter 7 bankruptcy estate? Well, I say these claims, I think the Court had cited something in its opinion on these particular claims. They're estate claims and the only way the debtor could assert an asset or an interest in them is by claiming some exemption in those particular claims. Or that they're not property of the estate. They're estate claims. But counsel, at the time of the filing of the petition, they didn't exist. Conversion takes you back to the original filing date. Under her theory, the claims accrued after confirmation and the property vested in her. There is no estate at that point. You now convert the case and whatever she had on the filing date, which did not include these claims, would be property of the Chapter 7 estate, the real property, other assets. But these claims didn't exist at that time. How did they revest in the Chapter 7 estate? How did they become property of the Chapter 7 estate if they weren't part of the Chapter 11 estate? Well, all these claims, I'd say to answer that, all these claims stem from, as counsel said for the appellant, from the wrongful foreclosure claims, from the $73,000 dispute that they had prior to the bankruptcy. All these claims were in existence, at least according to the debtor, prior to. They were resolved as part of the confirmation, the modification agreement, the plan. They were all resolved on that at that time. And they're going back to those same claims. Again, they all stem from that same issue. So what I'm hearing you say is, on the merits, these claims were all part of resolutions that occurred prior to confirmation of the plan. All the amounts that they've alleged are the basis, were all settled as part of that. Nothing different has occurred. So on the merits, there is no viability to these claims. So it doesn't really matter who owns them. They don't really exist. And that's what the court found. They don't really exist. They aren't really any damages. There aren't really any issues because the amounts that she alleges were all part of a settlement. Is that fair? That is fair, that they are part of the settlement. They all stem from the same, like what we cited as the nucleus of facts under Hania, I believe, which is, yes, they are all part of the same resolution that was made prior to this dispute as to lender liability claims. Everything else that existed as of the time of the filing. And they became the trustees as well. And the trustee didn't abandon them. Is that right? I mean, I appreciate that. And I know that it's exceedingly difficult to keep all the allegations and complaints in your head for purposes of an oral argument. But just pulling up the complaint, you know, paragraph 51 on December 1st, 2021, on Vera's advice, Aaron's wrote FCI requesting a loan modification and the complaints that it wasn't handled right per California law. To counsel's point, taking this as true for purposes of the motion dismissed, how do we ignore that? How do we say that on December 1, 2021, an action clearly was incorporated under the settlement previously, and now it cannot state as a matter of law, a claim. I think for a couple of reasons, I'd say first, those claims were even the fact that she's alleging a homeowner Bill of Rights claims or those claims relating to the wrongful foreclosure. Those were specifically addressed in the modification agreement, the plan. But if it happened after the modification, right, it can't be released if it happens post. It can't, correct. It can't be released if it happens post. But if it relates to the same claims that were already resolved, that would have res judicata effect, she's judicially understand the $73,000, the application, the extension fee. I get all that. But there seems to be a possibility, at least that a more rigorous examination of this suggests that there are post confirmation events, post settlement events that did or could state a cause of action. And to that, I would say, I think the court did a good job of analyzing it, the underlying court of saying that these claims that she was asserting, not only were they contradictory to the record, but they were deemed frivolous. And I think the court analyzed at least the various claims that she was asserting, whether it was the $73,000, whether it was the subsequent foreclosure, which all related to the number amounts. And we addressed those in, sorry, Howard. Howard Bauchner What is the possibility of this modification that happened December, which is several months after confirmation and approval of the settlement? It seems to suggest that a loan modification was requested, and there was wrongfully no response or consideration of that. So that cannot be covered by the scope of the settlement. It happened December, the settlement was approved in February. Paul Correct. Although the foreclosure itself stems from the exact terms that were in the plan, which was the amounts only, it was all agreed to. And as far as if they're asking, talking about the subsequent foreclosure notice, they still have to state something that actually amounts to a cause of action, and they weren't able to do that there. Joe Well, this gets to an interesting point, and I want to jump off it. But I mean, it goes to the dismissal with prejudice. All right. And that may be getting more to where I'm going. If there's actions that were post-settlement, is there any way that someone could state a viable claim for wrongful foreclosure or the like? I get your point that cancellation seems remote. But as for the wrongful foreclosure, how do we know that that can't be based upon the post-confirmation activity? Paul Because I think they still have to come up with some viable claim in here. And we cited, I think the Menjivar case was one case, and also the Albrecht case for the leave to amend, is they haven't provided any basis for a claim. The court did take that into account. The court did look at what their allegations were. We responded to them in the motion to dismiss to show that there was no basis for them. And the court still provided. Not only have they not provided any allegations that would amount to a cause of action, there was no amended complaint filed. There wasn't a motion to amend filed either that could provide some basis for the court to assume that there was some claim that would amount to a wrongful foreclosure. There was nothing. The numbers that we discussed, the notifications regarding foreclosure, again, the court could still look back at the settlement agreement that provided that homeowner building rights requirements weren't even required. This was a business purpose loan. They could look back to those facts as well to state there wasn't a claim there. There was nothing that amounted to a legitimate cause of action that they could articulate either in the complaint or in the opposition at the hearing. There was what the court deemed to be frivolous, especially based on the actions that were provided. The court also seemed to preclude the trustee from ever trying to resuscitate this claim and made much of the fact that the trustee did not object, although there was some equivocation in the transcript as to what the trustee wanted. The problem that I have a little bit of concern about is that the trustee wasn't a party. Is it your position that this dismissal with prejudice, from which the court found that these were not claims held by the debtor, is it your interpretation of that order that the from bringing such claims if, on consideration, the trustee felt that such claims were, there was a valid basis? Yes, I think it is a dismissal of these claims. I think the trustee did have an opportunity to respond. How? They're not a party. They did appear in the action as the party, though. They substituted in as a real party in interest. They appeared at the status conferences. They appeared at the motion to dismiss. So, I mean, what they appear, but to what purpose? The trustee had no reviewed the claims, reviewed the record, reviewed and decided not to pursue the claims. And I think they have the ability to do that or to decide to I refrain from proceeding, which he did and even appeared at the hearing to state the claims or whatever his position was and didn't proceed. I thought that the trustee was fairly clear that he preferred that the dismissal be without prejudice. I think he wanted a right. My assumption is that he wanted a right or didn't want to be a part of the whole dispute. But I there was no reason. There was no claim that could be asserted. But he's just given he's just notified of this. He's being foreclosed before he actually ever becomes a party. But the trustee, the trustee was involved from the conversion, a trustee. We appeared at the conference, signed the joint status conference statement with us. It was a part of the record said that he consented to jurisdiction, actually signed the joint status conference, confirming that he consented to jurisdiction. It was part of the court's ruling in the memorandum, which said that, again, the trustee did not that he waived the right forfeited any defenses to dismissal on the merits. And he did participate, at least to the extent that he was aware of it. He signed the stipulations as far as for the status conferences appear, provided what his position was. And so the extrapolation is that by failing to to join or bring this appeal, he is foreclosed his rights. Yes, I think. Yes, I believe that there's there's he is he is foreclosed. He waived it or didn't oppose and chose not to. I mean, there was he did participate. It wasn't a situation where he just showed up after the fact or didn't show up at all and then just found out that it had been dismissed and and and it had been appealed. He chose not to participate. I see I only have a couple of minutes left and I'm happy to answer any questions if you have. But I with regards to the claims themselves and I think it's it's important to note that the doctrines of res judicata collateral staff will apply here. They're trying to get out of the agreement by asserting a state law doctrine or just in general, that there's frustration of purpose, which, again, the whole idea of these agreements is to have a lasting binding resolution that we're not going to have to worry about going back on and resolving and fighting over these claims later. Your Honor is correct. There are trying to assert some post confirmation claims, but what they are is they're extrapolating the 73 through 2000 dollar default and dispute that was resolved in the plan to all these other claims that they're throwing together to see if something can be it throw against the wall and see if it sticks. The settlement that we had, the plan had significant concessions by the canceled their foreclosure. They voted in favor of the plan, all of this in exchange for broad releases. So they went so the debtor won't come back and sue them again for the same exact claims that they're providing for now. It was noticed out to everybody as a 19 compromise, as a full and final resolution. And nobody, including the debtor, objected to that. Instead, they welcomed it. This was their opportunity to sell the property if they could. And she was unable to, unfortunately. But this doesn't get her out of the obligation. And I see my time is ticking down. So thank you, Your Honor. Thank you. Thank you very much. All right, Mr. Antonini, I think you have, let's see, a little under two minutes. So please go ahead. And I think you're still muted. If you try control A, I think it'll probably work. You know better than I. Yeah, there we are. There we are. Now, I have done three Zoom arguments this week, and I'm still not used to it. But I'm going to go to Judge Spraker's point. We are making a, you know, line of demarcation between pre-conversion events and post-conversion events, which of course is crucial because it determines one's standing and two, who owns what. Paragraphs 51 and 52 of the complaint, which is on page 46 of the record. Now that is, you apply a loan, you know, and when you apply for a loan modification and you get no response, that is an automatic violation of the Homeowner's Bill of Rights. Period. End of discussion. And it, you know, obviously, she could say, can allege that had they considered my loan modification application, they should have approved it, and we wouldn't be here. There's your damage. There's a claim right there. If you look at, you know, paragraph 70, you know, paragraph 75 of the complaint, which is on page 49, you know, it talks about the $73,000, but there are other things in there as well. You know, inflated charges, maybe not based on the $73,000, charges that weren't authorized. And that would be a violation of 2924 of the California Civil Code and give rise to a claim for wrongful foreclosure if those charges, you know, led to the foreclosure. So, you know, under the pleading standards, unless the court can say that nothing, not a single thing either expressed or implied in this complaint can lead to a valid cause of We must uphold this dismissal. And I think Judge Fraker and I think other members of the panel have, you know, sincere doubts about that. And that, you know, that sort of dictates the conclusion that this has to be reversed. Okay. All right. Thank you very much. The time is up. So, the matter is submitted and we will get you our decision promptly. Thank you.
judges: Faris, Spraker, and Gan